UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC W. SKURKA,                    :    CIVIL NO: 1:19-CV-02127
                                   :
            Plaintiff,             :    (Magistrate Judge Schwab)
                                   :
      v.                           :
                                   :
ANDREW SAUL,                       :
Commissioner of Social Security,   :
                                   :
            Defendant.             :
                                   :

**MEMORANDUM OPINION**

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The plaintiff, Eric W. Skurka, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded to the Commissioner for further consideration.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 10-1* to *10-12*.[1]  This is not Mr. Skurka's first case in this court appealing the denial of benefits under the Social Security Act.  In 2016, Mr. Skurka filed a complaint appealing the denial of Disability Insurance Benefits under Title II of the Social Security Act, asserting that he had been disabled since February 4, 2010. *Admin. Tr.* at 71–75 (complaint in *Skurka v. Colvin*, 1:16-cv-01523 (M.D. Pa.)).  Adopting a Report and Recommendation of Magistrate Judge Saporito, on September 27, 2017, Judge Jones affirmed the Commissioner's decision denying Disability Insurance Benefits to Mr. Skurka. *Id.* at 93–94.

While *Skurka v. Colvin* was pending, Mr. Skurka filed another application for benefits, the denial of which is the basis of the present case.  More specifically, on July 27, 2016, Mr. Skurka protectively filed[2] an application for SSI benefits,

---

[1]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Mr. Skurka's claims.

[2]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, Mr. Skurka's application for SSI is dated September 9, 2016. *See Admin. Tr.* at 131.  But there is a reference in the record to the filing date as July 27, 2016. *Id.* at 92.  And July 27, 2016, is the date identified by the ALJ as the date that Mr. Skurka  protectively filed his application for SSI. *Id.* at 15.

contending that he became disabled on November 26, 2014.[3] *Admin. Tr.* at 131–38. After the Commissioner denied Mr. Skurka's claim at the initial level of administrative review, Mr. Skurka requested an administrative hearing. *Id.* at 103–105.  On August 8, 2018, with the assistance of counsel, he testified at a hearing before Administrative Law Judge ("ALJ") Frank Barletta. *Id.* at 34–70.

The ALJ determined that Mr. Skurka was not disabled since July 27, 2016, the date he filed his application for SSI. *Id.* at 16, 30.[4]  And so he denied Mr. Skurka benefits. *Id.* at 12–30.  Mr. Skurka appealed the ALJ's decision to the Appeals Council, which denied his request for review on October 17, 2019. *Id.* at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In December of 2019, Mr. Skurka began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence

---

[3]  November 26, 2014 is the day after a prior ALJ issued his decision denying Mr. Skurka Disability Income Benefits. *See Skurka v. Colvin,* 1:16-cv-01523 (M.D. Pa.) at *Doc. 9-2.*  November 26, 2014 was likely chosen to avoid any overlap with the time period at issue in *Skurka v. Colvin* and the application of res judicata if there was an overlap with the time period at issue in the prior case.

[4]  At the hearing, Mr. Skurka's counsel asserted that he was amending the alleged onset date to September 1, 2014. *Admin. Tr.* at 40  ("We would amend the alleged onset date her to 9/1/14.").  Counsel explained that if Mr. Skurka was found disabled going back to September 1, 2014, he would be eligible for Disability Insurance Benefits as well as SSI since Mr. Skurka met the insurance requirements for Disability Insurance Benefits through September 30, 2014. *Id.* at 40–41.

and contains errors of law. *Doc. 1* at ¶¶ 14–15.  He requests that the court reverse the Commissioner's decision and award benefits or, in the alternative, remand the case to the Commissioner for a new hearing. *Id*. at § V.

After the Commissioner filed an answer and a certified transcript of the administrative proceedings, *docs. 9, 10*, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned, *doc. 12*.  The parties then filed briefs, and this matter is ripe for decision. *Docs. 15, 18, 21*.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Mr. Skurka was disabled, but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate that he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[5]  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

Unlike with Disability Insurance Benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  SSI "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

---

[5]  Here and elsewhere, "we cite to the edition of the Code of Federal Regulations in force at the time of the ALJ's decision in this case." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 n.1 (3d Cir. 2019).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

The ALJ must assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).  In making this RFC assessment, the ALJ considers all relevant evidence in the record and all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 416.945(a)(1), (a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision Denying Mr. Skurka's Claim.

On November 30, 2018, the ALJ denied Mr. Skurka's claim for benefits. Before applying the sequential-evaluation process, the ALJ addressed Mr. Skurka's request to amend the onset date to September 2, 2014. *Admin. Tr.* at 15.

8

Construing that request as a request to reopen the prior claim for Disability

Insurance Benefits, and finding no good cause for reopening, the ALJ denied the

request to reopen the claim for Disability Insurance Benefits. *Id.* The ALJ then

proceeded to apply the sequential-evaluation process, and he determined that Mr.

Skurka has not been disabled within the meaning of the Social Security Act during

the relevant time. *Id.* at 16–30.

At step one of the sequential-evaluation process, the ALJ found that Mr.

Skurka had not engaged in substantial gainful activity since July 27, 2016, the date

he applied for SSI. *Id.* at 17.

At step two of the sequential-evaluation process, the ALJ found that Mr.

Skurka had the following severe impairments: osteoarthritis; Perthes disease;

blindness of the left eye; diabetes mellitus with diabetic neuropathy; obstructive

sleep apnea; hypertension; dyslipidemia; obesity; depressive disorder, bipolar

disorder; obsessive-compulsive disorder, panic disorder; and post-traumatic stress

disorder. *Id.* at 17–18.

At step three of the sequential-evaluation process, the ALJ found that Mr.

Skurka did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. *Id.* at 18–20.  More specifically, the ALJ discussed Listings 9.00, 11.14, 1.02A,

4.00, 3.09, 2.02, 12.04, 12.06, and 12.15, and determined that Mr. Skurka did not meet any of those listings. *Id*.

The ALJ assessed Mr. Skurka's RFC.  In making this RFC assessment, the ALJ reviewed Mr. Skurka's assertions regarding his limitations, his treatment records, and the statements of Mr. Skurka's father. *Id*. at 21–25.  The ALJ found that Mr. Skurka's medically determinable impairments reasonably could be expected to cause his alleged symptoms. *Id.* at 25.  But he found that Mr. Skurka's statements regarding the "intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." *Id*.

The ALJ also reviewed the opinion evidence in the record. *Id*. at 26–27.  In this regard, the ALJ considered Mr. Skurka's GAF scores, and he gave those scores only partial weight. *Id*. at 26.

The ALJ gave little weight to the opinion of Dr. Berger, who was Mr. Skurka's treating psychiatrist and who opined the Mr. Skurka had a host of marked and extreme limitations and, as a result, he would miss work three times a month. *Id*. at 27.  The ALJ concluded that "[t]here is a lack of objective clinical or laboratory finding to support the degree of limitation that Dr. Berger finds." *Id*. The ALJ also reasoned that Dr. Berger "does not relate his opinion to any specific findings; his opinion is not supported by his reports, which indicate only routine

outpatient care, with often noncompliant use of prescribed medication; and his

assessment is inconsistent with [Mr. Skurka]'s self-reported activities of daily

living." *Id.*

      The ALJ asserted that he gave partial weight to the opinion of Dr. Grabon,

who conducted a consultative examination of Mr. Skurka and who opined as to Mr.

Skurka's physical limitations. *Id.* As to Dr. Grabon's opinion, the ALJ asserted:

> The undersigned gives this opinion partial weight, as it is
> consistent in some areas with the relatively benign observations
> and findings during the evaluation. However, it appears that
> the examiner relied on the claimant's subjective reports of
> symptoms in some instances, and these limitations are not
> consistent with the evidence documented in his longitudinal
> treatment records.

*Id.*

      Finally, without explicitly stating what, if any, weight he assigned to the

opinions of the State Agency medical consultants, who evaluated Mr. Skurka at the

initial level, the ALJ stated that he considered these opinions. *Id.* But the ALJ

concluded that "[w]hile these opinions were reasonable at the time they were

rendered, additional evidence received since that time convinces the undersigned

that [Mr. Skurka] is more limited than was originally thought." *Id.*

The ALJ found that Mr. Skurka had the RFC to perform sedentary work[6]

with the following limitations:

> he can lift/carry 20 pounds occasionally and 10 pounds
> frequently; stand/walk a total of two hours in an 8-hour
> workday; sit a total of six hours in an 8-hour workday;
> occasionally push/pull with the left lower extremity, but not
> repetitively; occasionally climb ramps and stairs but never
> ladders, ropes, or scaffolds; occasionally balance, stoop, kneel,
> and crouch; never crawl; occasionally feel bilaterally; cannot
> use his left eye; must avoid work involving potentially
> heightened risk of eye injury, such as welding, grinding,
> cutting, and sawing; must be afforded the ability to wear eye
> protection to protect vision of his better eye; should avoid
> concentrated exposure to extreme cold, vibration, and hazards;
> would be limited to unskilled work, involving only simple tasks
> that are not performed in a fast-paced production environment;
> would be limited to low-stress occupations with only
> occasional, simple, decision making and occasional changes in
> work duties or work settings; and can have only occasional
> interaction with the public, coworkers, and supervisors.

*Id.* at 20.

At step four of the sequential-evaluation process, the ALJ found that Mr.

Skurka could not perform his past relevant work in cemetery sales and credit-card-

equipment sales. *Id.* at 28.

---

[6] *See* 20 C.F.R. § 416.967(a) ("Sedentary work. Sedentary work involves lifting no
more than 10 pounds at a time and occasionally lifting or carrying articles like
docket files, ledgers, and small tools.  Although a sedentary job is defined as one
which involves sitting, a certain amount of walking and standing is often necessary
in carrying out job duties.  Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met.")

At step five of the sequential-evaluation process, considering Mr. Skurka's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were other jobs—such as scanner, inspector, and assembler—that exist in significant numbers in the national economy that Mr. Skurka could perform. *Id*. at 29.

In sum, the ALJ concluded that Mr. Skurka was not disabled since July 27, 2016, the date he applied for SSI benefits. *Id*. at 30.

## V.  Discussion.

Mr. Skurka claims that the ALJ erred: (1) by failing "to recognize that the prior ALJ who denied Plaintiff's [Disability Insurance Benefits] claim in 2014 was not constitutionally appointed, and improperly relied on that decision as res judicata in refusing to allow Plaintiff to amend his alleged onset date and [pursue] his claims for both [Disability Insurance Benefits] and SSI"; (2) by failing "to assign significant weight to the assessment of the treating psychiatrist for erroneous reasons"; (3) by failing "to assign significant weight to the assessment of the consultative physician for erroneous reasons"; and (4) by failing "to present a hypothetical question containing all of Plaintiff's credibly established limitations to the [Vocational Expert]." *Doc. 15* at 3.

Given the ALJ's extremely terse analysis of the opinion of Dr. Grabon, the consulting examiner, we start with Mr. Skurka's third claim—that the ALJ erred with respect to the weight he assigned to Dr. Grabon's assessment.  Because the ALJ did not adequately explain his reasoning for rejecting some of the limitations set forth by Dr. Grabon, the ALJ has not met his burden of articulation.  Lacking a clear explanation of the ALJ's reasoning, we cannot conclude that the ALJ's decision was supported by substantial evidence.  The ALJ's decision, therefore, will be vacated and Mr. Skurka's case remanded for further proceedings.

**A.  Dr. Grabon's Examination and Assessment.**

Dr. Grabon examined Mr. Skurka, and he completed a report of that examination dated December 9, 2016. *Admin. Tr.* at 453–469.  Dr. Grabon summarized Mr. Skurka's complaints. *Id*. at 453–454.  As most relevant here, Dr. Grabon summarized Mr. Skurka's complaints regarding his hips as follows:

> He has a history of Legg-Calve-Perthes disease as well, going back to 1980.  He had a fusion of the left hip.  He said he needs a hip replacement, but he is too heavy at this time for a hip replacement.  He developed pain into the right hip as well as into the back.  The pain in the left hip is currently 8/10, sharp, constant, and toothache like.  He says he cannot sit still, trouble with going up and down stairs.  He has been taking OxyContin.  The right hip has started acting up and getting worse, achy pain, also is mild, chronic.

*Id*. at 453.  Dr. Grabon also stated in his report that he reviewed some of Mr. Skurka's records. *Id*. at 455.

14

And Dr. Grabon conducted a physical examination of Mr. Skurka. *Id.* at

455–57.  As most relevant here, Dr. Grabon recorded his observations regarding

Mr. Skurka's general appearance, gait, and station:

> The claimant appeared to be in no acute distress.  Gait is antalgic on the left.  Declines to walk on heels and toes secondary to pain, unsteady, and loss of balance appreciated.  Squat 30 degrees.  Stance normal.  Assistive device:  Straight cane improves his stride length and stability.  Needed no help changing for exam or getting on and off exam table.  Able to rise from chair without difficulty.

*Id.* at 455–56.  And he recorded his observations as to Mr. Skurka's

musculoskeletal and neurological systems:

> MUSCULOSKELETAL: No scoliosis, kyphosis, or abnormality in thoracic spine.  SLR negative bilaterally both seated and supine.  No evident joint deformity.  Tenderness to palpation at the lumbar facets and bilateral SI joints.  No redness, heat, or effusion.
>
> NEUROLOGIC:  DTRs physiologic and equal in upper and lower extremities.  Decreased sensation to light touch fingertips of the hands and stocking-glove distribution to the feet.  Strength 4/5 throughout the left lower extremity, 5/5 in right lower extremity and bilateral upper extremities.

*Id.* at 456.

Dr. Grabon listed Mr. Skurka's diagnoses as: (1) Diabetes; (2) Hypertension;

(3) Hyperlipidemia; (4) Left eye blindness; (5) Low back pain; (6) History of

Legg-Calve-Perthes disease, status post left hip fusion in 1980s, with persistent

pain; (7) Headaches; (8) Depression; (9) Bipolar; (10) Post-traumatic stress

disorder; (11) Obsessive-compulsive disorder; and (12) Lower extremity

neuropathy. *Id*. at 457.  And he concluded that Mr. Skurka's prognosis was "Fair to guarded." *Id*.

Dr. Grabon also completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" as well as "Range of Motion Chart." *Id*. at 458–63, 464–67.  In his Medical Source Statement, Dr. Grabon opined that Mr. Skurka had the following limitations: he can lift and carry up to only ten pounds occasionally; he can sit, stand, and walk one hour without interruption and four hours in an eight-hour work day; he requires the use of a cane, which is medically necessary, to ambulate, but he can walk 30-40 feet without the cane; he can use his right foot continuously and his left foot frequently; he can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl, but he can never climb ladders or scaffolds or balance; he can never work at unprotected heights; and he cannot walk a block at a reasonable pace on rough or uneven surfaces. *Id*. at 458–63.

### B. The ALJ failed to adequately articulate reasons for assigning partial weight to Dr. Grabon's opinion.

The ALJ's discussion of Dr. Grabon's opinion was brief.  After summarizing Dr. Grabon's report, the entirety of the ALJ's analysis of that report is as follows:

> The undersigned gives this opinion partial weight, as it is
> consistent in some areas with the relatively benign observations
> and findings during the evaluation.  However, it appears that
> the examiner relied on the claimant's subjective reports of
> symptoms in some instances, and these limitations are not

consistent with the evidence documented in his longitudinal
treatment records.

*Id.* at 27.

In weighing any medical opinion, the ALJ must clearly articulate his or her
reasoning.  In other words, the ALJ must "set forth the reasons for his decision" to
allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642
F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a
particular format in conducting his analysis," the ALJ must ensure "sufficient
development of the record and explanation of findings to permit meaningful
review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision
must set out "a clear and satisfactory explication of the basis on which it rests."
*Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained the weight given
to all probative exhibits, 'to say that [the] decision is supported by substantial
evidence approaches an abdication of the court's duty to scrutinize the record as a
whole to determine whether the conclusions reached are rational.'" *Dantzler v.
Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019)
(quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Here, the ALJ's rationale for rejecting some of the limitations set forth by
Dr. Grabon is too opaque to permit meaningful judicial review.  Although the ALJ
states that he gave Dr. Grabon's opinion partial weight, he fails to state which
limitations set forth by Dr. Grabon he accepted and which he rejected.  Further,

17

although the ALJ stated that "it appears" that Dr. Grabon relied on Mr. Skurka's subjective symptoms in some instances, he points to nothing in Dr. Grabon's report to support that assertion. And he does not indicate in which instances, Dr. Grabon, who physically examined Mr. Skurka and reviewed some of records, relied on Mr. Skurka's subjective reports of symptoms.[7] Finally, although the ALJ contends that some of the limitations set forth by Dr. Grabon are not consistent with Mr. Skurka's "longitudinal treatment records," the ALJ fails to specify which limitations are not consistent with the treatment records. Moreover, he fails to cite to any treatment records. In sum, the ALJ simply has not sufficiently explained his decision to provide partial weight to the opinion of Dr. Grabon such that we can review that decision.

And we cannot say that the ALJ's error in this regard was harmless because had the ALJ credited Dr. Grabon's opinion, the RFC that he crafted would likely have been significantly different from the one he set forth. Take for example, Mr. Skurka's ability to sit. Dr. Grabon opined that Mr. Skurka could sit for a total of

---

[7] In his brief, the Commissioner asserts that the ALJ, who found Mr. Skurka only partially credible, "may appropriately discount the opinion of Dr. Grabon to the extent that it was based on Plaintiff's subjective symptoms." *Doc. 18* at 21–22 (citing *Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003) ("An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted.")). That begs the question, however, whether Dr. Grabon's opinion was based on Mr. Skurka's subjective complaints. And the Commissioner has made no attempt to show whether, or to what extent, Dr. Grabon's opinion was based on Mr. Skurka's subjective complaints.

four hours in an eight-hour workday. *Id*. at 459.  But without saying why he rejected that specific limitation, the ALJ concluded (without citation to anything in the record to support that conclusion) that Mr. Skurka could sit for a total of six hours. *Id*. at 28.  Whether Mr. Skurka could sit for only four hours in an eight-hour day or he could sit for six-hours in an eight-hour day makes a difference as to whether Mr. Skurka can engage in sedentary work.

Further, we reject the Commissioner's *post hoc* attempt to provide the reasoning missing from the ALJ's decision.  In his brief, the Commissioner points out that Dr. Lombard, the state agency physician, opined that Mr. Skurka could sit for six hours in an eight-hour workday. *Doc. 18* at 22.  The Commissioner asserts that "[a]lthough Dr. Lombard's opinion was not adopted by the ALJ, it lends support to the ALJ's assessment that Plaintiff remained able to sit for six hours in an eight-hour workday." *Id*.  "The court may not, however, evaluate the ALJ's administrative decision on any grounds other than those the ALJ actually relied upon in making his decision." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *6 n.13 (M.D. Pa. Mar. 14, 2014) (citing *SEC v. Chenery,* 332 U.S. 194, 196 (1947) (stating that a court must judge the propriety of an administrative decision that the "administrative agency alone is authorized to make" solely on the grounds the agency invoked, and if those grounds are inadequate or improper, the court cannot affirm the agency's decision)).  In this case, the ALJ did not rely on

Dr. Lombard's opinion in rejecting Dr. Grabon's opinion.  In fact, the ALJ appears to have rejected Dr. Lombard's opinion. *Admin. Tr.* at 27 (stating that he considered the opinions of the state agency medical consultants and concluding that "[w]hile these opinions were reasonable at the time they were rendered, additional evidence received since that time convinces the undersigned that [Mr. Skurka] is more limited than was originally thought.").  Thus, we reject the Commissioner's invitation to affirm the ALJ's decision based on evidence that the ALJ did not credit.

Similarly, in an attempt to bolster the ALJ's decision, the Commissioner in his brief contends that Mr. Skurka's daily activities support the ALJ's decision to not credit Dr. Grabon's opinion. *Doc. 18* at 22.  Again, however, the ALJ did not rely on Mr. Skurka's daily activities as a reason to reject Dr. Grabon's opinion. Therefore, neither can we.

The Commissioner also points to numerous references from the records of Dr. Berger's office that plaintiff walked with a normal gait at his visits. *Id*.  Dr. Berger was Mr. Skurka's treating psychiatrist, and he did not render an opinion on Mr. Skurka's physical limitations.  But as long as we are cherry picking references from a psychiatrist's records regarding Mr. Skurka's physical limitations, we note that in addition to the references in Dr. Berger's records that Mr. Skurka walked with a normal gait, there are also numerous references in the records from Dr.

Berger's office that Mr. Skurka had a limping gait. *See e.g. Admin. Tr.* at 541 (progress note from July 18, 2018—"Walks with a limping gait."); at 535 (progress note from July 3, 2018—"Walks with a limping gait."); at 478 (progress note from May 15, 2018—"Walks with a limping gait."); at 484 (progress note from May 1, 2018—"Walks with a limping gait.").  And there are numerous references that Mr. Skurka was experiencing pain apparently while sitting. *See e.g. Admin. Tr.* at 537 (progress note from July 12, 2018—"Appears to be in moderate-severe distress, moderate discomfort, experiencing pain and pain is indicated by changing positions often."); at 531 (progress note from June 28, 2018—"Appears to be in moderate-severe distress, moderate discomfort, experiencing pain and pain is indicated by changing positions often."); at 484 (progress note from May 1, 2018—"Patient is experiencing obvious discomfort and pain is indicated by facial grimace."); at 486 (progress note from April 19, 2018—"Appears to be in moderate-severe distress, moderate discomfort, experiencing pain and pain is indicated by changing positions often."); at 488 (progress note from April 5, 2018—"Appears to be in moderate-severe distress, moderate discomfort, experiencing pain and pain is indicated by changing positions often.").  In any event, the ALJ did not rely in Dr. Berger's records to discount the opinion of Dr. Grabon.  Neither can we.

21

In sum, given the ALJ's conclusory treatment of Dr. Grabon's opinion, we cannot conclude that substantial evidence supports the ALJ's decision. Accordingly, we will remand the case the Commissioner for further proceedings.

### C.  Mr. Skurka's Other Claims of Error.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's handling of Dr. Grabon's opinion, we will not address Mr. Skurka's remaining claims of error.  "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id*.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration.  An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge

22